IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

CHERI L. OLSEN,

        Plaintiff,

   Vs.                                 No. 13-2424-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

      This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Cheri L. Olsen's ("Webb") Title II application for disability insurance benefits under the Social Security Act ("Act"). Olsen alleged a disability onset set date of November 30, 2007, based on a combination of impairments. Olsen remained insured through June 30, 2011, so her disability must be established on or before that date. The administrative law judge ("ALJ") filed her decision on May 1, 2012, finding that Olsen was not under a disability through June 30, 2011. (Tr. 31-41). With the Appeals Council's denial of Olsen's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 3) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 4, 9 and 10), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show she suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show her impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, she continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet her burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found that, the claimant Olsen had not engaged in substantial gainful activity from her alleged onset date through her

last insured date of disability. At step two, the ALJ found the following severe

impairments:   "lumbar spondylosis; major depressive disorder; DAA [drug

and alcohol addiction] in remission." (Tr. 33). At step three, the ALJ did not

find that the impairments, individually or together, equaled the severity of the

Listing of Impairments. Before moving to steps four and five, the ALJ

determined that Olsen had the residual functional capacity ("RFC") to perform:

> a limited range of light work as defined in 20 CFR 404.1567(b). She
> could sit six hours out of an 8-hour day; stand/walk 4 hours out of an
> 8-hour day with normal breaks; and lift/carry up to 10 lbs. frequently
> and 20 lbs. occasionally. She was precluded from using foot pedals and
> could not use her lower extremities for repetitive movements. She could
> not climb ladders, ropes, or scaffolds; she could occasionally climb
> stairs, bend, balance, stoop, kneel, crouch, or crawl; she was precluded
> from work around unprotected heights. She could perform moderately
> complex tasks, following 3 to 5 step instructions; she was precluded
> from jobs requiring hypervigilence; she should not have been in charge
> of safety operations of others; she was precluded from intense
> interpersonal interactions (i.e. should not be taking complaints or in
> situations like those encountered by law enforcement or emergency
> personnel); and she could occasionally travel to unfamiliar locations.

(Tr. 35). At step four, the ALJ found the claimant was unable to perform her

past relevant work. (Tr. 39). At step five, the vocational expert provided

testimony from which the ALJ concluded that, "[c]onsidering the claimant's

age, education, work experience, and residual functional capacity, the

claimant had acquired work skills from past relevant work that were

transferable to other occupations with jobs existing in significant numbers in

the national economy." *Id*.

**ISSUE ONE:   ERRONEOUS ASSESSMENT OF RFC**

For the most part, the court will address the plaintiff's arguments in the order she has made them. First is the contention that the ALJ's decision fails to cite and discuss the evidence supporting the mental limitations used for the RFC finding. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). Observing that the ALJ made highly specific and narrowly tailored limitations on mental RFC, the plaintiff disputes that these findings address all of her mental limitations in the medical record and challenges the findings as not supported by substantial evidence. Specifically, she faults the ALJ's decision for not discussing the reasons for excluding the state agency medical consultant Dr. Witt's findings of a moderate functional limitation in maintaining concentration, persistence or pace (Tr. 350) and a moderate limitation of the ability to get along with coworkers (Tr. 337), as well as, the consulting examining psychiatrist Dr. Pulcher's findings of "[a]daptibility and persistence would appear to be limited both by her depression and by her self-reported fibromyalgia." (Tr. 370).

In completing the Psychiatric Review Technique ("PRT"), Dr. Witt recorded a global rating of a moderate limitation on the general category of

concentration, persistence and pace. (Tr. 350). And on the Mental Residual Functional Capacity Assessment ("MRFCA"), under the general category of "Sustained Concentration and Persistence," Dr. Witt marked the function of ability to carry out detailed instructions as moderately limited and marked no other functions as so limited. (Tr. 336). Thus, there is no inconsistency between Dr. Witt's PRT and MRFCA, and his completion of the two forms explains his opinion on this moderate limitation. *See Chrismon v. Colvin*, 531 Fed. Appx. 893, 898 (10th Cir. Aug. 21, 2013). The ALJ's RFC finding did account for the plaintiff's limitation with detailed instructions, and it is consistent with Dr. Witt's MRFCA assessment and PRT findings.

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citations omitted). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Dr. Witt did mark on the MRFCA a moderate limitation on the plaintiff's ability to get along with coworkers. (Tr. 337). On the other hand, Dr. Pulcher found from his examination of Olsen that her "[a]bility to work with others without distraction from psychological symptoms would appear to be grossly intact." (Tr. 370). Thus, it was for the ALJ to determine RFC from these opinions. In the same way, the ALJ noted and

necessarily weighed Dr. Pulcher's opinion on Olsen's "adaptability and persistence" being limited which he attributed both to her depression and to "self-reported myalgia," the latter of which was not confirmed by Dr. Jones' trigger point examination. (Tr. 370).

The ALJ's decision expressly recognizes that the mental RFC assessment used at steps four and five involves a more detailed assessment. (Tr. 34-35). The administrative record includes Dr. Witt's assessment of Olsen's mental RFC which finds moderate limitations on the ability to understand and carry out detailed instructions, the ability to get along with coworkers or peers, and the ability to travel in unfamiliar places or use public transportation. (Tr. 336-37). The ALJ summarized the findings of the consultative examining psychiatrist, Dr. Pulcher, which included his diagnosis of major depressive disorder, severe and recurrent, and his opinion that Ms. Olsen "was able to understand and carry out simple instructions; [and] work with others without distraction from psychological symptoms." (Tr. 370). The ALJ discussed Dr. Monaco's mental Medical Source Statement (MSS) and incorporated them in the RFC determination "to the extent that they are supported by the record." (Tr. 37). The ALJ plainly gave little weight to Dr. Monaco's opinion which included mental diagnoses not otherwise found in the record. The ALJ's credibility finding on Dr. Monaco will be discussed later. The plaintiff has not shown that the ALJ's RFC findings for Olsen lack sufficient

correspondence with the medical evidence of record. The findings place limits on the complexity of instructions, responsibility for safety of others, duties requiring "hypervigilence," intense interpersonal interactions, and travel to unfamiliar locations. Even if the ALJ did not make express credibility findings as to Dr. Witt and Dr. Pulcher, the ALJ plainly credited the findings of Dr. Witt who was the state agency medical consultant. (Tr. 34). Moreover, Dr. Witt's mental RFC assessment is generally consistent with Dr. Pulcher's findings which were reviewed and cited in Dr. Witt's assessment. (Tr. 352). The court finds that the ALJ did separately discuss Olsen's mental limitations and evaluated the relevant medical evidence. Although all the evidence of record must be considered, the "ALJ does not have to discuss every piece of evidence." *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007) (citation omitted). Though this discussion could not be described as comprehensive, it is procedurally adequate and appears to be supported by substantial evidence. *See Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).

The plaintiff next argues the ALJ erred in not giving more evidentiary weight to the opinions of her treating physician, Dr. Monaco, concerning both her mental and physical limitations. The plaintiff complains the ALJ did not follow the proper standards in according "little great weight" to Dr. Monaco's source statement, in incorporating some of Dr. Monaco's opinions on mental limitations but excluding others without explanation, and in

failing to interpret Dr. Monaco's findings on mental limitations as "generally consistent" with the opinions of Dr. Witt and Dr. Pulcher. (Dk. 4, pp. 22-23).

The ALJ has a "duty to give consideration to all the medical opinions in the record" and "must also discuss the weight he assigns to such opinions." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir.2012). "Under the 'treating physician rule,' the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation omitted). In evaluating a treating physician's opinion, the ALJ's initial step is to "consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If the opinion meets this step, then it "must be given controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). If it is fails this standard, then the opinion is not entitled to controlling weight. *Id*. "But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. A treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citing 20 C.F.R.

§ 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Asture*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks and citations omitted). Nothing more is required than for the ALJ to provide "good reasons in his decision for the weight he gave to the treating sources' opinions." *Id*. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)). The court reviews "the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011).

The ALJ's decision reveals that little weight was given Dr.

11

Monaco's opinion, as it was not consistent with the administrative record and was not supported by his treatment records. The ALJ specifically noted as examples that Dr. Monaco's treatment records fail to document any medical basis for prescribing the need for elevating legs, for ascribing more limitations to the right leg, and for diagnosing vertigo. (Tr. 37). The ALJ noted that the treatment records "reflect primarily refills of prescriptions for pain medications, with some attention paid to her complaints of depression." (Tr. 36). The ALJ highlighted from the records:

> In November 2008, the claimant told Dr. Monaco that she had been fired from her job at JoAnn's Fabrics because a routine background check revealed her remote history of narcotic use. Exhibit 2F/28. She reported depression since that time. Dr. Monaco continued her prescription for Fentanyl for pain and Adderall for attention deficit disorder. In July 2009, the claimant told Dr. Monaco that she continued to be depressed with no motivation and suicidal thoughts. She reported that her chronic back pain kept her from "meaningful work." Dr. Monaco's chart note also indicates that the claimant told him she would not "abuse medications anymore," and as a result suffers at time with her pain. Dr. Monaco continued her Fentanyl prescription but limited the number of Hydrocodone not to exceed an average of two per day over a month, to prevent potential for addiction. Chart notes in November 2009 mention that Prozac had helped her to be not suicidal, but the resulting 20 lb. weight gain had worsened her joint pain and she continued to report that she could not function well enough to get a job. Exhibit 2F. Although he noted that Dr. Nabil had made a diagnosis of bipolar disorder in the remote past, Dr. Monaco continued to diagnose depression and adjustment reaction. *See* Exhibit 7F/1.

(Tr. 36). The ALJ quoted and summarized what Dr. Monaco described as his clinical findings to support the limitations identified in source statements. The ALJ concluded they were so lacking of "objective findings" as to "undercut[] the

physician's assertion of limitation." (Tr. 37).

As demonstrated above, the ALJ's decision fairly shows that controlling weight was not given Dr. Monaco's opinion and that the ALJ articulated sufficient grounds for this conclusion. The ALJ's decision describes Dr. Monaco's treatment records as showing primarily Olsen's subjective reports and complaints. (Tr. 36). Subjective reports are not "medically acceptable clinical and laboratory diagnostic techniques" and may justify according less than controlling weight to a treating physician's opinion. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). The ALJ's summary of Dr. Monaco's treatment records indicates she looked at the length and frequency of the treating relationship, as well as its nature and extent, including the treatment provided. The ALJ identified from the records when Olsen reported depression to Dr. Monaco and when Prozac was prescribed to help with suicidal concerns. The ALJ's findings on Dr. Monaco's opinions are supported specifically by the treatment records, but they are also sustained by Dr. Pulcher's opinion that Olsen's alleged "memory problems and concentration issues" were not consistent with her abilities demonstrated in Dr. Pulcher's interview. (Tr. 36, 370). The decision adequately demonstrates that the ALJ considered Dr. Monaco's opinion under the proper legal standards and that the ALJ incorporated Dr. Monaco's opinions to the extent they were consistent with his treatment records and the other evidence of record.

13

Because Dr. Monaco's opinion on the extent of the plaintiff's limitations is inconsistent with the other medical evidence, is not supported by his treatment records, and is open to questioning for the lack of objective clinical findings, the ALJ did not err in weighing Dr. Monaco's opinion and substantial evidence sustains the ALJ's decision.

Finally, the plaintiff contends the ALJ's RFC analysis is inadequate in being based only on that part of the medical record which supports it. The ALJ's decision shows all of the medical evidence was considered and adequately discussed under the required legal standards. Employing the deferential standard of review, the court concludes that substantial evidence supports the RFC finding and that the ALJ applied the correct legal standards for evaluating medical evidence.

**ISSUE TWO: ERRONEOUS CREDIBILITY FINDING OF PLAINTIFF'S COMPLAINTS OF SYMPTOMS**

The plaintiff contends the ALJ's credibility determination is factually inaccurate and inadequate to meet the applicable legal standard. Specifically, the record does not sustain the ALJ's inferences of medication abuse or possible drug-seeking behavior. Nor does the occasional act of walking a dog sustain an inference that the claimant can perform substantial gainful employment at the stated RFC level. The ALJ's stated reason for discounting the third party statement from claimant's mother is neither logical nor representative of the proper legal standards. Finally, the ALJ's credibility

findings demonstrate the ALJ relied on isolated parts of the record and are not supported by substantial evidence.

Tenth Circuit "precedent does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (internal quotation marks and citation omitted). The Commissioner has promulgated regulations identifying factors relevant in evaluating symptoms: daily activities; location, duration, frequency and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii). The ALJ's decision does not lay out these factors, but it does discuss several of them.

The ALJ found that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC finding. (Tr. 37). The ALJ based this credibility finding on the following factors:   extended conservative treatment, terminating work for reasons unrelated to alleged disabling condition, current levels of activity, drug-seeking behavior, inconsistencies in

the evidence, and the lack of objective medical evidence in support of her

statements. (Tr. 35-39). The ALJ noted that the Olsen has seen Dr. Monaco for

the last six or seven years and primarily received only refills of pain

medications "without further diagnostic workup or referrals." (Tr. 36, 38). *See*

*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (noting that in

evaluating credibility, ALJ may consider effectiveness of medications taken to

alleviate pain). While Olsen did see a psychiatrist in 2005, she "currently just

receives anti-depressant medication from her general practitioner," and she

told the ALJ it had "been 3 or 4 years since she saw a mental health

professional." (Tr. 38). *See Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir.

2009) (holding that a history of conservative treatment undermines

allegations of disabling symptoms). The ALJ found the plaintiff's complaints of

depression to Dr. Monaco began after her termination from JoAnn's Fabrics

that happened in November of 2007 which is about the same time as her

alleged onset date of disability. The ALJ noted that the plaintiff told Dr. Monaco

that she was fired because a background check showed a distant history of

narcotic use. *See Roggi v. Colvin*, 2013 WL 5304084 at *12 (D. Kan. 2013)

(relevant credibility factor is the claimant's "termination for reasons unrelated

to his ability to work").

The ALJ did not just discuss the plaintiff occasionally walking her

dog, but noted the plaintiff told Dr. Pulcher that she had the ability "to drive, go

16

to the grocery store; bathe; dress; clean; and do her laundry." (Tr. 36). The ALJ also highlighted the plaintiff's later part-time employment at a craft store from which she was terminated for excessive sick leave. It remains the province of the ALJ to determine credibility by weighing and judging activity levels and inconsistencies in those accounts. The court does not find the ALJ here to have applied an erroneous legal standard in considering and weighing this evidence.

The ALJ did discuss finding references in the record to "possible drug-seeking behavior." (Tr. 38). The court finds sufficient evidence of record to support a determination that Olsen's "credibility about her pain and limitations was compromised by her drug-seeking behavior." *Poppa v. Astrue*, 569 F.3d at 1172. Dr. Monaco's treatment records from July 2009 state that a limited supply of hydrocodone of "two daily average over a month" in order "to prevent potential for addiction." (Tr. 330). Later in 2009, the treatment records show a prescribed rate of 1 tablet every 4 to 6 hours. (Tr. 328). In July of 2010, the pharmacy refused to refill Olsen's prescription and Olsen called Dr. Monaco's office for a prescription that would allow her to take 8 to 10 pills daily. (Tr. 381). Dr. Monaco recorded, "we haven't changed our rx for a long time! Why is she taking more, or why is it an issue now?" (Tr. 381). In August of 2010, Dr. Monaco's records show he told Olsen that she needed "to start titrating down" her hydrocodone as she would "not be allowed refills as often."

17

(Tr. 383). Later in August, Dr. Monaco's office declined refill requests as premature. (Tr. 385). A similar situation played out again in June of 2011, and Dr. Monaco recorded concerns over acetaminophen toxicity risk. (Tr. 444, 446). This is sufficient evidence to support a finding of drug-seeking behavior.

Nor does the court find error in the ALJ's consideration of the claimant's mother's third-party statement that Olsen "spends all day on the couch, depressed and does little in the way of household chores." The evidence that the ALJ relied on in discounting the plaintiff's credibility similarly discredits the mother's opinion about the plaintiff's limitations. *Eastman v. Colvin*, 2014 WL 6675058 at \*12 (D. Kan. 2014) (citing *Buckner v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011)). This includes the factor that the claimant and Dr. Monaco were satisfied with the medication regimen for treating the claimant's symptoms. The ALJ did not err in evaluating this evidence from a third party.

Finally, the plaintiff argues the ALJ impermissible culled the evidence isolating and highlighting only that which supported the desired credibility finding. The court disagrees. The ALJ's decision is thorough in summarizing and discussing the evidence on both sides of the credibility issue, and the court is not convinced that the ALJ improperly screened the case for evidence to reach a pre-determined result.

**ISSUE THREE:   ERRONEOUS HYPOTHETICAL QUESTION**

This issue simply recasts the plaintiff's arguments already

18

addressed above. The plaintiff here challenges the hypothetical question asked
of the vocational expert as erroneously based only on the ALJ's RFC finding.
The plaintiff challenges the questions as inadequate in not reflecting all of her
limitations as evidenced by Dr. Monaco's opinion.

An ALJ must accept and include in his hypothetical questions only
those limitations supported by substantial evidence of record. *Shepherd v.
Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999) ("claimant's testimony . . ., by
itself, is insufficient to establish the existence of an impairment" for inclusion in
a hypothetical). The ALJ is not required to include in a hypothetical question
limitations "claimed by plaintiff but not accepted by the ALJ as supported by
the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).
Consequently, it is enough if the posed hypothetical question "adequately
reflected the impairments and limitations that were borne out by the
evidentiary record." *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013).
The ALJ here properly included in his hypothetical question only those
limitations she found to be credible from the evidence of record. Having
discounted the opinions of the treating physician and the credibility of the
plaintiff's pain complaints, the ALJ was not compelled to include these in his
question. The court is satisfied that the ALJ did not err in limiting his
hypothetical to those findings that are supported by substantial evidence.

19

IT IS THEREFORE ORDERED that the judgment be entered in
accordance with sentence four of 42 U.S.C. § 405(g) affirming the
Commissioner's decision.

Dated this 30th day of December, 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge